```
 1                UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF OHIO
 2                    WESTERN DIVISION


 3


 4  OLD GRANITE DEVELOPMENT, LTD.,  -  Case No. 3:06-CV-2950
                                    -
 5       Plaintiffs,               -  Toledo, Ohio
                                    -  May 16, 2008
 6          v.                     -  Motion Hearing
                                    -
 7  CITY OF TOLEDO,                -
                                    -
 8       Defendants.               -
    -------------------------------
 9
                      TRANSCRIPT OF MOTION HEARING
10            BEFORE THE HONORABLE JACK ZOUHARY
                 UNITED STATES DISTRICT JUDGE.
11
    APPEARANCES:
12
    For the Plaintiffs:  Barkan & Robon
13                         By:  Marvin A. Robon
                                R. Ethan Davis
14                         Suite 100
                           1701 Woodlands Drive
15                         Maumee, OH 43537
                           (419) 897-6500
16
    For the Defendants:  Bahret & Associates
17                         By:  Robert J. Bahret
                                Keith J. Watkins
18                         Suite 709
                           7050 Spring Meadows, W
19                         Holland, OH 43528-1844
                           (419) 861-7800
20
    Court Reporter:      Tracy L. Spore, RMR, CRR
21                         1716 Spielbusch Avenue
                           Toledo, Ohio 43624
22                         (419) 243-3607

23


24
    Proceedings recorded by mechanical stenography,
25  transcript produced by notereading.
```

| | | |
|---|---|---|
| 12:49:47 | 1 | (Commenced at 12:50 p.m.) |
| 12:50:34 | 2 | THE COURT:  We're on the record in case |
| 12:50:37 | 3 | 06-2950, Old Granite Development v. City of Toledo. |
| 12:50:41 | 4 | The Court has spent some time with counsel and some of |
| 12:50:44 | 5 | the parties prior to coming on the bench.  We have |
| 12:50:47 | 6 | outlined several motions that are pending prior to next |
| 12:50:50 | 7 | week's trial, which is what we're going to address next |
| 12:50:53 | 8 | on the record. |
| 12:50:56 | 9 | Let's do this in a bit of reverse order.  We |
| 12:51:00 | 10 | have a motion filed by the Defendant, City of Toledo, to |
| 12:51:09 | 11 | exclude a newly identified witness.   It is number 196 |
| 12:51:15 | 12 | on the court docket.   And the Court has reviewed that |
| 12:51:19 | 13 | motion.   The plaintiff apparently wishes to call one |
| 12:51:24 | 14 | Stanley Brown.   And that name was not disclosed until |
| 12:51:28 | 15 | very recently.   And the defendant claims it has not had |
| 12:51:32 | 16 | an opportunity to depose Mr. Brown. |
| 12:51:37 | 17 | Does anyone wish to argue -- it's your |
| 12:51:40 | 18 | motion, Bob.  If you wish to argue it further, you may. |
| 12:51:43 | 19 | If not, we'll turn it over to Marv and his team. |
| 12:51:47 | 20 | MR. BAHRET:  I'll let them respond, and we |
| 12:51:50 | 21 | may rebut. |
| 12:51:51 | 22 | THE COURT:  Keith? |
| 12:51:52 | 23 | MR. WATKINS:  I just wanted to make sure the |
| 12:51:54 | 24 | Court got the motion in limine that we just filed |
| 12:51:56 | 25 | recently on that subject. |

12:51:58  1     MR. BAHRET:  That's the motion he just says

12:52:00  2 he has.

12:52:01  3     MR. WATKINS:  Okay, thank you.

12:52:02  4     THE COURT:  Document number 196.

12:52:06  5     MR. WATKINS:  Yes.

12:52:06  6     THE COURT:  Marv.

12:52:08  7     MR. ROBON:  Thank you, Your Honor.  Mr.

12:52:10  8 Laskey brought me a purchase contract that was signed

12:52:14  9 that he just found in preparation for the trial.  It

12:52:19  10 was signed by this individual with a cashier's check.

12:52:23  11 At the time apparently the guy couldn't get financing;

12:52:27  12 he finally got it.  He came out to look at the

12:52:29  13 subdivision, saw the big pipes lying on the railroad

12:52:34  14 right-of-way and said, all the trees are gone.  I'm not

12:52:38  15 going to buy.  It was a witness that we had no

12:52:40  16 knowledge of before.  I would also point out that the

12:52:44  17 witness list that was provided by opposing counsel was

12:52:48  18 received yesterday, so we're --

12:52:52  19     THE COURT:  But are there any witnesses on

12:52:54  20 their list that you have not had an opportunity to

12:52:57  21 depose or were not previously disclosed to you?

12:53:00  22     MR. ROBON:  There are two or three of them,

12:53:03  23 but I'm willing to take my chances, Judge.  I don't

12:53:06  24 think's anybody with a smoking gun there that I'm

12:53:09  25 concerned about.

12:53:11  1          MR. BAHRET:  We also disclosed the witnesses

12:53:20  2  informally by way of letters previously on more than one

12:53:24  3  occasion.   All we did more recently is put it in

12:53:27  4  official form and filed it.   No name is on that list

12:53:29  5  that we filed he didn't already know from informal

12:53:33  6  disclosures.

12:53:36  7          THE COURT:  Timeframe of Mr. Brown's

12:53:38  8  purchase contract and the timeframe of the incident in

12:53:42  9  this case?

12:53:45  10         MR. BAHRET:  We have not seen the purchase

12:53:46  11  contract, Your Honor, even as I sit here, but we are

12:53:49  12  told that it was somewhere in 2004 he allegedly provided

12:53:54  13  a purchase contract, and then two and a half years or

12:53:57  14  more later he suddenly supposedly came up with money and

12:54:00  15  magically shows up at the subdivision.   Had we known

12:54:04  16  that information earlier, we would have deposed him and

12:54:08  17  also challenged his new-found finances to see if it

12:54:12  18  really was true.  We had previously in discovery asked

12:54:16  19  for all purchase contracts, all documents with reference

12:54:19  20  to any sales, even pending sales.   That was not

12:54:22  21  produced.

12:54:24  22         THE COURT:  There appears to be no dispute

12:54:25  23  that this is the type of information that should have

12:54:27  24  been forthcoming during discovery.   The Court

12:54:30  25  understands that sometimes information is found at a

12:54:33  1   late date, which appears to be the case here.   However,

12:54:38  2   this is Friday, and our trial does start on Monday, and

12:54:41  3   it appears to me that this is quite late in the game.

12:54:45  4   And that because it is so late in the game, it is

12:54:50  5   appropriate to exclude Mr. Brown's testimony.

12:54:52  6          The Court would add that it does not appear

12:54:55  7   his testimony is critical to the proof in plaintiff's

12:54:59  8   case.   At best it may be something that's additional to

12:55:03  9   other evidence the plaintiff has at its ready.   And

12:55:09  10  therefore, the Court will grant the defendant's motion

12:55:11  11  and preclude Mr. Brown from testifying in this case.

12:55:18  12          Next on my list --

12:55:21  13          MR. ROBON:  Your Honor, can I make a point?

12:55:25  14          THE COURT:  Sure.

12:55:26  15          MR. ROBON:  In some cases I would have to

12:55:28  16  bring that witness in and proffer him.   Can I just

12:55:30  17  proffer his testimony now so I don't have to bring him

12:55:33  18  in and have him excluded?

12:55:35  19          THE COURT:  Sure, you may proffer it now.

12:55:37  20  The Court would note, however, that the proffer is being

12:55:39  21  made without the production of any documents for either

12:55:43  22  Court or counsel.

12:55:44  23          MR. ROBON:  I thought we had sent the

12:55:46  24  contract with the letter, the e-mail.   I apologize for

12:55:49  25  that.   It's a simple one-page purchase contract.

12:55:52  1        THE COURT:  Go ahead and do it right now

12:55:54  2   since we're on the topic, if you wish.   I just want the

12:55:57  3   record to reflect no document has been provided to the

12:55:59  4   Court, and it apparently has not been provided to

12:56:02  5   opposing counsel.  As counsel indicates, there is no

12:56:05  6   opportunity to depose this witness nor opportunity to do

12:56:08  7   appropriate follow-up with any testimony that he might

12:56:12  8   give.

12:56:13  9        MR. ROBON:  Thank you, Your Honor.   The

12:56:15  10   witness would simply testify that he was ready to

12:56:18  11   purchase; he had the money.  He came out to the

12:56:21  12   subdivision, saw the big concrete pipe that was going to

12:56:26  13   be installed on the railroad right-of-way, and saw trees

12:56:29  14   were cut down, and decided he didn't want to buy any

12:56:32  15   longer.

12:56:36  16        THE COURT:  Next on my list is the

12:56:45  17   defendant's motion to preclude reference to wetlands.

12:56:51  18   It's document number 157 on the Court docket.   And

12:56:59  19   again, since have a brief from defendant but have not

12:57:03  20   heard from plaintiff, although probably it may make some

12:57:07  21   sense to talk about plaintiff's motion for

12:57:09  22   reconsideration of treble damages at the same time

12:57:13  23   because part of that is based on a wetlands issue, as I

12:57:17  24   understand it.   And maybe the two can be argued

12:57:22  25   together.   You tell me if you think I'm wrong on that.

12:57:24   1          MR. WATKINS:  That's fine with me, if the

12:57:27   2   Court prefers to have them argued together.

12:57:29   3          THE COURT:  There's some overlap there, so

12:57:31   4   that's why I'm suggesting it.   I'll note that

12:57:34   5   plaintiff's motion for reconsideration is document

12:57:36   6   number 163 on our docket and that there is an opposition

12:57:42   7   by the City which is document number 195.

12:57:46   8          Keith.

12:57:47   9          MR. WATKINS:  Thank you.   On the wetlands

12:57:49  10   issue, the motion that we filed initially was back in

12:57:55  11   April, and that's a matter of record.   In response

12:57:58  12   there was the question of Mr. Kusnier's deposition.   In

12:58:03  13   the document filed on behalf of plaintiffs entitled

12:58:10  14   Plaintiff's Memorandum in Response to the Motion for

12:58:13  15   Protective Order related to John Kusnier and the

12:58:17  16   wetlands issue, the plaintiffs state, "We believe Mr.

12:58:19  17   Kusnier is going to opine the following:  That a

12:58:22  18   permit" --

12:58:23  19          THE COURT:  I'm going to stop you.  In the

12:58:25  20   interest of time, I have the brief you're referring to;

12:58:28  21   I earlier referenced it.   It's 163.  I've read the

12:58:32  22   brief.   So don't read from the brief, please, but add

12:58:35  23   to the argument if you wish.

12:58:37  24          MR. WATKINS:  I just wanted to point out as

12:58:39  25   a preface those things on page 3 of the brief.   But

12:58:42   1   also Mr. Kusnier's deposition, which I understand has

12:58:46   2   been filed with the Court, contradicts what they are

12:58:48   3   saying.

12:58:49   4           THE COURT: When was his deposition filed?

12:58:51   5   Anybody know?

12:58:52   6           MR. ROBON: It was filed a week ago

12:58:54   7   Thursday.

12:58:55   8           THE COURT: Thank you.

12:58:59   9           I guess before you go on, I'm sorry to

12:59:01   10   interrupt you, Keith. I want to cut to the chase.

12:59:04   11   Keith is indicating that you did not get from Mr.

12:59:09   12   Kusnier the two opinions that you set forth on page 3.

12:59:15   13   Is Keith right or wrong?

12:59:19   14           MR. ROBON: I'm sorry. We didn't get the

12:59:22   15   opinions --

12:59:23   16           THE COURT: Yes. He said that -- I'm

12:59:25   17   sorry. The brief that you filed indicated on page 3

12:59:34   18   that Mr. Kusnier would opine that a permit would have

12:59:43   19   had to have been issued to cut wetland trees in 2006.

12:59:46   20   Is that what he said?

12:59:47   21           MR. ROBON: He opined that the permit that

12:59:50   22   was actually issued by the Ohio EPA did not provide for

12:59:54   23   filling of one of the ditches, and he also opined that

12:59:59   24   he found 47 potential wetland areas in the right-of-way,

13:00:05   25   one of which was as close as Hospice.

13:00:08    1              THE COURT:  I'm sorry to interrupt you, but

13:00:10    2     I'm an equal opportunity interrupter.

13:00:13    3              Do you have page 3 of your brief in front of

13:00:15    4     you?

13:00:16    5              MR. ROBON:  I don't have it in front of me.

13:00:24    6              THE COURT:  Look at page 3 of the brief I'm

13:00:26    7     about to hand you.   It is your brief.   And you

13:00:28    8     indicated on page 3 that he would opine to point A and

13:00:32    9     point B.  And without reading them into the record, tell

13:00:35   10     me whether he did or did not opine on those two points.

13:00:38   11     That's my question.

13:00:43   12              MR. ROBON:  No.  They objected to my asking

13:00:44   13     him that, and he said he did not do a wetlands study

13:00:48   14     because the City didn't engage him to do a phase 2,

13:00:52   15     which he would have had to have done in order to opine

13:00:54   16     on this.

13:00:56   17              THE COURT:  So he did not opine on those two

13:00:59   18     points?

13:00:59   19              MR. ROBON:  Well, he --

13:01:00   20              THE COURT:  You have reasons for why he

13:01:02   21     didn't, but he didn't?

13:01:04   22              MR. ROBON:  He did not.

13:01:04   23              THE COURT:  Thank you.   I just wanted to

13:01:06   24     get that clear.

13:01:07   25              Keith, we're back to you.

13:01:08  1          MR. WATKINS:  I just wanted to clarify, Your

13:01:10  2  Honor, for the record, Mr. Kusnier -- and what I have is

13:01:15  3  an index.  The actual deposition, as I understand it,

13:01:18  4  has been filed with the Court.  But on page 50 he

13:01:21  5  testifies he feels comfortable that there are no

13:01:24  6  wetlands in that area on the Cambridge subdivision.

13:01:29  7  That would be page 50, lines 15 through 20.

13:01:32  8          On page 55 he testified no areas of

13:01:36  9  potential concern were found near or adjacent to Old

13:01:40  10  Granite pertaining to wetlands.

13:01:42  11          And then the final references I wanted to

13:01:44  12  make were on pages -- page 39, he testified: Does not

13:01:51  13  require any separation or distances between wetland

13:01:54  14  boundaries and upland areas, nor is there a requirement

13:01:58  15  for buffers; the Army Corps of Engineers has no such

13:02:02  16  requirements.  He considers himself an expert in the

13:02:05  17  area of wetlands.  And finally, he testified that the

13:02:09  18  Ohio EPA or Corps of Engineers may be concerned or may

13:02:13  19  have things they want to do about filling of a ditch in

13:02:16  20  a wetland area, but there is no regulatory action they

13:02:20  21  can take because of it.  That's what I wanted to

13:02:24  22  address on the wetlands issue in addition to what we've

13:02:27  23  already presented before the Court.

13:02:30  24          On the motion to reconsider the issue, if I

13:02:37  25  can find my notes here --

13:02:39   1          THE COURT:  Before you go on to that, let's

13:02:41   2   give them a chance to comment on the wetlands issue.    I

13:02:51   3   should note for the record the plaintiff's brief

13:02:53   4   indicates on page 5 that no claim is being asserted on a

13:02:56   5   wetlands issue.   However, the plaintiff is trying to

13:02:59   6   use that evidence to show negligence or recklessness in

13:03:05   7   this case.

13:03:06   8          MR. ROBON:  Your Honor, I would like to

13:03:07   9   point out that Mr. Kusnier testified and his report was

13:03:13  10   admitted into the record that there were 47 potential

13:03:16  11   wetland areas that he determined for the City of Toledo.

13:03:21  12   This was done back in 1998.   Between 1998 and 2006, the

13:03:27  13   City did not, did not engage his firm or any other firm

13:03:33  14   to do a phase 2 study to see if those 47 potential

13:03:38  15   wetland areas, in fact, were wetland areas.   And he

13:03:41  16   also testified that the trees that were found in the

13:03:44  17   railroad ditches contained wetland-type trees, and he

13:03:48  18   described the particular kinds of trees.

13:03:51  19          The reason that we point this out to the

13:03:53  20   Court is the reckless nature of the City's attitude,

13:03:58  21   just like they cut the 24-inch storm main.   They didn't

13:04:02  22   go the additional step that they should have done, that

13:04:05  23   any engineer dealing with environmental problems or

13:04:11  24   potential environmental situations would have done.

13:04:15  25   They didn't follow the advice of their own expert.

13:04:18  1  They did no advance studies.

13:04:20  2        THE COURT:  The question I have is, of those

13:04:23  3  40-some potential sites, was the site that's involved in

13:04:27  4  this case identified as one of those sites?

13:04:29  5        MR. ROBON:  The Hospice site, which is one

13:04:33  6  property away, was identified.

13:04:36  7        MR. BAHRET:  Two properties away.

13:04:38  8        THE COURT:  The property involved in this

13:04:39  9  case was not identified?

13:04:40  10        MR. BAHRET:  He clearly testified, Your

13:04:42  11  Honor, that there are no potential wetlands, much less

13:04:46  12  an identified wetland on the Cambridge subdivision or

13:04:50  13  even contiguous with it.  He also testified that the

13:04:53  14  City, since it's a governmental entity putting in a

13:04:56  15  utility line, would not need to apply for permits to cut

13:04:59  16  every tree right through the middle of wetlands as long

13:05:02  17  as they're putting in a utility.  So it's a red herring

13:05:05  18  that he's talking about anyway.  On top of that, he

13:05:07  19  doesn't have a private right of action to complain about

13:05:10  20  doing anything in wetlands that aren't his.

13:05:12  21        THE COURT:  I understand and agree with your

13:05:14  22  last point, and I think he has in effect in his brief

13:05:17  23  conceded that point by indicating he's not offering it

13:05:21  24  for the purposes of a direct claim.  He wants to use it

13:05:26  25  to show negligence in the City's efforts or lack of

13:05:35   1   efforts at this property.

13:05:47   2           I am persuaded that the wetlands reference

13:05:54   3   is inappropriate in this case; and therefore, I'm going

13:05:57   4   to grant the City's motion in limine precluding the

13:06:03   5   reference to wetlands.   I don't see that it impacts the

13:06:09   6   issues before the Court.   Counsel has indicated that

13:06:13   7   wetlands were not identified with respect to this

13:06:16   8   property.   I am going to review the deposition

13:06:20   9   transcript.   I'm assuming that defense counsel's

13:06:23  10   representations and pages that were referenced in the

13:06:26  11   oral argument today will support what they said.   And

13:06:30  12   to the extent they do, that will be my ruling.   If I

13:06:33  13   find otherwise, then I reserve the right to change my

13:06:36  14   ruling.   I don't, again, view that wetlands is relevant

13:06:43  15   to the issues here, and I'm further convinced of that

13:06:46  16   because we don't have a wetlands expert, and if the

13:06:50  17   testimony is wetland type and that sort of thing, that

13:06:55  18   allows for some speculation, and I believe gets us far

13:06:59  19   afield.   And it's my recollection when we had our last

13:07:03  20   hearing that the wetlands have sort of creeped into this

13:07:06  21   case late in the game.   And I'd be willing, frankly, to

13:07:10  22   consider it if it had some direct relevance.   But I'm

13:07:13  23   not seeing it as I sit here today.   So I will grant the

13:07:17  24   motion and will exclude testimony using the phrase

13:07:25  25   "wetlands."

13:07:28    1             We are still with plaintiff's motion for

13:07:33    2   reconsideration of treble damages. Having just given

13:07:35    3   my ruling on wetlands, that may also dictate the result

13:07:39    4   in plaintiff's motion for reconsideration of treble

13:07:43    5   damages as I read the brief, but I am happy to listen to

13:07:46    6   any additional argument you may have. I note, for

13:07:50    7   example, there is no Ohio EPA official; there is no

13:07:55    8   federal official coming in to discuss wetlands and what

13:07:59    9   role that played here and what the City may have done or

13:08:01   10   not done with respect to those issues. And I believe

13:08:05   11   that I'm inclined to deny the motion for reconsideration

13:08:10   12   of treble damages and leave on the table those three

13:08:12   13   issues I identified at my last hearing -- I'm sorry, in

13:08:16   14   my last opinion, which indicated that the trial of this

13:08:21   15   case, and I'm now referring to document number 153 on

13:08:30   16   the Court document, that the claims remaining in this

13:08:35   17   case for trial -- this is my April 10th order -- against

13:08:41   18   the City are negligence, trespass, and unconstitutional

13:08:45   19   taking. And those are the three issues that are set

13:08:51   20   for trial next week.

13:08:57   21             Hearing nothing further from plaintiff, that

13:08:59   22   takes me --

13:09:00   23             MR. ROBON: Your Honor, could I make a

13:09:01   24   proffer on that too?

13:09:03   25             THE COURT: Absolutely.

13:09:04    1              MR. ROBON:  So I don't have to bring Mr.

13:09:06    2    Kusnier in and waste the jury's time.

13:09:08    3              THE COURT:  We also have his -- as I

13:09:09    4    understand it, his deposition is filed.  So in

13:09:12    5    addition, that's additional.  Feel free to proffer at

13:09:15    6    this time.

13:09:15    7              MR. ROBON:  We would proffer his deposition

13:09:18    8    testimony, but in addition to that, the purpose of using

13:09:21    9    the testimony of Mr. Kusnier to identify 47 wetland

13:09:28   10    areas and the City's reckless attitude in just

13:09:32   11    disregarding their own expert's recommendation for phase

13:09:35   12    2, I believe shows a pattern of conduct that the City

13:09:42   13    damned the will of everybody, we're going to do what we

13:09:47   14    want to do.  And Mr. Bahret is correct that Mr. Kusnier

13:09:50   15    did identify the National -- I think it was -- Safety

13:09:53   16    Pipeline Act where they can go through wetlands, but

13:09:58   17    what Mr. Bahret didn't say is that Mr. Kusnier indicated

13:10:02   18    that the statute requires them to only take the

13:10:07   19    necessary width for digging a trench.  They can't take

13:10:11   20    a wider area.  And in this particular case they took 70

13:10:15   21    or 80 feet when they put in the water main, which I want

13:10:21   22    to point out to the Court.

13:10:22   23              MR. BAHRET:  Your Honor, first of all,

13:10:24   24    that's -- although he said it's in the form of a

13:10:28   25    proffer, it's more of an argument, not a proffer of

13:10:31    1    evidence.    Mr. Robon is 180 degrees out of phase as far

13:10:36    2    as what that national permit is all about.

13:10:38    3                    THE COURT:  Phase 1 or phase 2?

13:10:45    4                    MR. BAHRET:  I was slow to pick up on that.

13:10:48    5    The permit that would allow a governmental entity to

13:10:51    6    strip the land doesn't just say you can -- only as wide

13:10:56    7    as the ditch.    It says whatever width you need to

13:10:58    8    accomplish the project.    If that's 100 feet, it's 100

13:11:02    9    feet; if it's 80, it's 80.    It's more than just the

13:11:05   10    ditch.

13:11:06   11              Secondly, Mr. Kusnier identified in his

13:11:11   12    deposition, just so Marv sticks to the actual evidence

13:11:15   13    in his claim to proffer, said that there were no

13:11:17   14    wetlands identified.    They identified 47 in the span of

13:11:22   15    a 20-mile pipe, or whatever it is -- pipeline project.

13:11:26   16    They identified 47 potential areas that if you're going

13:11:30   17    to interfere with them, you might want to take another

13:11:32   18    look.    There is no testimony from any source that the

13:11:36   19    City didn't simply reroute and not go in those areas.

13:11:42   20    It's -- he's simply making that up.

13:11:46   21                    THE COURT:  Your point is the fact that the

13:11:47   22    City didn't do a phase 2 is not evidence of

13:11:51   23    recklessness, but rather a decision on the part of the

13:11:53   24    City to avoid going to those areas and thereby avoiding

13:11:58   25    the need for a phase 2?

13:11:59  1          MR. BAHRET:  Exactly.  And they did do a

13:12:01  2  phase 2 on environmental issues, and they did reroute

13:12:04  3  part of the project for that, but not an area that's

13:12:07  4  relevant to our discussion near Cambridge.

13:12:11  5          MR. ROBON:  Your Honor, I point out that the

13:12:13  6  47 potential wetland areas were within the railroad

13:12:16  7  right-of-way or adjacent to the right-of-way they were

13:12:20  8  looking at.

13:12:23  9          And the other thing that he -- I don't

13:12:26  10  believe the City of Toledo ever obtained a permit.  When

13:12:31  11  he's talking about the National Pipeline Act, I don't

13:12:34  12  believe that permit was ever acquired by the City of

13:12:37  13  Toledo.

13:12:38  14          MR. BAHRET:  The Act says you don't need to

13:12:40  15  get a permit.

13:12:41  16          THE COURT:  There's a dispute here about

13:12:42  17  whether the permit was needed.  I'm gathering that.

13:12:45  18  And I take it we have no one from the National Pipeline

13:12:48  19  to come in to say whether it was or not.  We have

13:12:50  20  varying opinions of people on both sides.

13:12:55  21          MR. BAHRET:  In fact, the EPA financed this

13:12:57  22  job and flyspecked it, and we have a permit from the

13:13:00  23  EPA, and he has a copy of it.

13:13:03  24          THE COURT:  If there's nothing further,

13:13:05  25  we'll move on and talk next about the Defendant's

13:13:10  1  motion, document number 199 on our docket.   Defendant's

13:13:30  2  motion in limine regarding plaintiff's taking claims.

13:13:35  3  And the Defendant here seeks to preclude reference to

13:13:39  4  takings.   The Court would note at the outset that that

13:13:46  5  is one of three claims set forth in the plaintiff's

13:13:48  6  complaint.   And I'm happy to hear from you, Keith.

13:13:55  7            MR. WATKINS:   Thank you, Your Honor.   The

13:14:00  8  reason for filing the motion was to demonstrate from at

13:14:05  9  least our side the contrast that has existed between

13:14:11  10  what the Courts have considered to be valid taking

13:14:14  11  claims and this case.   It's an issue that varies from

13:14:20  12  case to case in terms of what law applies.   And the

13:14:23  13  examples we have given, which we argue justify the

13:14:27  14  motion --

13:14:28  15            THE COURT:   Isn't this more appropriately a

13:14:31  16  motion for summary judgment or, at this stage of the

13:14:34  17  game, a motion for directed verdict?

13:14:36  18            MR. WATKINS:   To the extent -- I'm not sure

13:14:38  19  to what extent plaintiffs agree with us in terms of what

13:14:42  20  the facts are here.

13:14:43  21            THE COURT:   Well, let's find out.   Maybe

13:14:45  22  Marv, since he has not had an opportunity, in fairness,

13:14:49  23  to file something in response, maybe he will concede

13:14:51  24  this is not a takings case, but then again maybe Ethan

13:14:55  25  will disagree.

13:14:56  1           MR. DAVIS: I'll disagree, Your Honor.    It

13:14:58  2   is a takings case.

13:14:59  3           THE COURT:  Can I have you pull the mike.

13:15:01  4           MR. DAVIS: All that's needed for a taking

13:15:03  5   claim is substantial and unreasonable interference with

13:15:06  6   an individual's property rights by the government, and

13:15:09  7   that's clearly what happened here.

13:15:10  8           THE COURT:  Isn't the taking here limited to

13:15:12  9   the water issue?

13:15:13  10          MR. DAVIS: No, Your Honor.    There is an

13:15:15  11  element -- there is approximately nine trees that were

13:15:18  12  cut and taken from Old Granite's property by the City of

13:15:22  13  Toledo's agents in this case.

13:15:23  14          THE COURT:  Those nine trees would

13:15:25  15  constitute a taking?   What's your best case on this?

13:15:28  16          MR. DAVIS:  They came in and took part of

13:15:30  17  our property.   It's actually some of the stuff cited by

13:15:33  18  the defendant in their jury instructions, as a matter of

13:15:36  19  fact.

13:15:38  20          THE COURT:  Since I don't have a joint set

13:15:39  21  of jury instructions, I haven't had an opportunity to

13:15:42  22  review that.

13:15:43  23          MR. DAVIS: Yesterday evening they filed a

13:15:45  24  supplemental jury instruction citing several cases on

13:15:48  25  it.   And they outline what actions can result in a

13:15:53  1    take.    And one is when there's been a physical invasion

13:15:57  2    of the property by the City of Toledo.    Well, that

13:16:00  3    certainly happened by the City's agents in this case.

13:16:02  4    They came on our property; they cut down our trees.

13:16:06  5    That's a take.

13:16:07  6            They also cite -- the City of Toledo

13:16:11  7    destroyed or adversely affected the real property

13:16:14  8    interest.    We've got ponding water.    We've got trees

13:16:16  9    that they took and destroyed or converted to their own

13:16:19  10   use.    It's a take.

13:16:22  11           THE COURT:    Again, this is sounding more

13:16:24  12   like a motion for summary judgment or motion for

13:16:26  13   directed verdict.    So we'll entertain your arguments at

13:16:30  14   the conclusion of the appropriate evidence in the case.

13:16:33  15   I'm going to deny the City's motion in limine on this

13:16:38  16   point.

13:16:39  17           MR. WATKINS:    Can I simply add for the

13:16:40  18   record --

13:16:41  19           THE COURT:    Sure you may.

13:16:42  20           MR. WATKINS:    The argument that we have made

13:16:45  21   and presented authorities today to counsel and the Court

13:16:50  22   regarding -- and I say this because of the argument that

13:16:53  23   was just made that the City did this, the City did that.

13:16:56  24   Well, the City didn't do that; the City's agents and

13:16:59  25   employees did.    Our position is under several cases

13:17:03    1    we've cited from the Supreme Court, as well as the Sixth

13:17:07    2    Circuit, that there is no vicarious liability or

13:17:10    3    respondeat superior liability of the City of Toledo for

13:17:16    4    the conduct of its agents or employees under the law for

13:17:19    5    such a 1983 claim, constitutional claims, or any claims.

13:17:25    6    That's the law that we've seen.   And in this particular

13:17:27    7    case they didn't name any City of Toledo employees.

13:17:30    8             THE COURT:  That's a finer legal point that

13:17:32    9    you're now addressing, and the record should reflect

13:17:35   10    that Keith provided the Court and opposing counsel with

13:17:39   11    some cases on that.   We will look at that over the

13:17:45   12    weekend.   And if we believe there is a legal basis for

13:17:47   13    excluding this claim, we'll have some more discussion

13:17:50   14    before we start trial because I think it would be

13:17:53   15    inappropriate to have you go through the hoops of

13:17:56   16    presenting evidence of a taking when, in fact, the

13:17:59   17    result is going to be, based on the law that you have,

13:18:02   18    not a case for taking because certain parties have not

13:18:05   19    been identified.   So we will look at that.

13:18:08   20             And on that narrow ground I'll reserve the

13:18:14   21    right to supplement my ruling, which is to deny the

13:18:18   22    motion in limine.

13:18:18   23             MR. WATKINS:  Just so I'm clear, did the

13:18:20   24    Court want me to present a written motion on that issue?

13:18:23   25             THE COURT:  Not unless you think there's

13:18:25   1   something more you need to say other than what you've

13:18:27   2   done today and other than what's in the cases you

13:18:29   3   provided us.

13:18:30   4            MR. WATKINS:  There is not.

13:18:32   5            MR. DAVIS:  Your Honor, we would like to see

13:18:33   6   a written motion.  And the reason being is we've

13:18:36   7   cursory reviewed the stuff that they've given us.  We

13:18:40   8   find the case law to be completely inapposite.  They're

13:18:44   9   talking police brutality claims and punitive damages,

13:18:48  10   neither of which are an issue in this case.  I think

13:18:50  11   counsel's confusing a traditional 1983 governmental

13:18:56  12   abuse case by the police with a takings-type property

13:19:02  13   claim in this case.  So we would at least like to see

13:19:05  14   their argument articulated so we know what we're

13:19:08  15   responding to.

13:19:08  16            THE COURT:  You're about to hear it.

13:19:10  17            MR. WATKINS:  So I can be clear, unlike the

13:19:12  18   takings scenario, which we have said depends on the

13:19:17  19   facts of this case, the cases I've cited on respondeat

13:19:22  20   superior vicarious liability issues are clear as a

13:19:25  21   matter of law that when you have cases under Section

13:19:30  22   1983 generally from authoritative sources, there is no

13:19:35  23   such vicarious or respondeat superior liability for a

13:19:39  24   City.  It's true that I didn't find a case exactly

13:19:42  25   dealing with agents having something to do with wetlands

13:19:44  1    here,  but that is the law as stated in -- which applies

13:19:50  2    here.   The fact that he wants to rely on differences in

13:19:53  3    kind of the facts don't matter.   They didn't name

13:19:56  4    employees that they think are responsible and who could

13:20:00  5    have, in their own scenario, been entitled to some sort

13:20:04  6    of protective immunity, or maybe not.

13:20:07  7             THE COURT:  So your point, in a sentence, as

13:20:08  8    I understand it, Keith, is for the Section 1983 or

13:20:12  9    takings claim, the failure to identify individuals is

13:20:16  10   fatal to that claim?

13:20:19  11            MR. WATKINS:  Yes.

13:20:21  12            THE COURT:  You now have heard the argument.

13:20:22  13   I now have given you an opportunity.   I don't think I

13:20:25  14   need a brief.   But if you have some cases, I'll give

13:20:28  15   you the same opportunity to deliver or e-mail or fax

13:20:32  16   cases that you think represent the opposite viewpoint or

13:20:36  17   a differing viewpoint that is more applicable.

13:20:41  18            MR. DAVIS: We will do so, Your Honor.

13:20:42  19   Thank you.

13:20:45  20            THE COURT:  We now come to the last motion,

13:20:48  21   which is plaintiff's motion in limine precluding

13:20:51  22   defendant's reference to spoliation of evidence.   It's

13:20:55  23   document number 185 on our docket.   And we have a brief

13:21:01  24   by the City opposing that.   It's document number 194.

13:21:10  25            As I understand it, spoliation of evidence

13:21:13  1  is a cause of action that can be pursued.   The City has

13:21:17  2  raised it as an affirmative defense in this case, which

13:21:20  3  is a bit different.   And I want you to help me out on

13:21:25  4  how I treat that.   But, Ethan, it's your motion; you

13:21:30  5  should go first.

13:21:31  6          MR. DAVIS: I'll defer to them.   Your Honor

13:21:34  7  is obviously on top of the issues.

13:21:37  8          THE COURT:  I understand it as a cause of

13:21:39  9  action, and parties should not intentionally destroy

13:21:42  10  evidence for trial, and if you do, you can be subject to

13:21:45  11  sanctions and damages.   As an affirmative defense, I'm

13:21:49  12  struggling a bit on how that fits.

13:21:51  13          Let me indicate to you what I'm further

13:21:53  14  thinking.   I think the underlying facts of your

13:21:58  15  spoliation argument are probably relevant in the sense

13:22:01  16  that the scene has changed from the time that the City

13:22:06  17  went out there and did what they did.   Therefore, there

13:22:09  18  may need to be some explanation to the jury why someone

13:22:12  19  can't go out and find the exact line or point to

13:22:16  20  something that's no longer there because there's been a

13:22:19  21  change to the topography, some additional dirt has been

13:22:23  22  placed there by whomever.   But I'm not sure the phrase

13:22:27  23  "spoliation of evidence" is relevant to this case.

13:22:32  24          MR. WATKINS:  My understanding is that it is

13:22:38  25  something that we have to bring up as a defense, which

13:22:42  1   we have done in the case.   Their motion, as I

13:22:45  2   understand it -- and it is different than a cause of

13:22:47  3   action.  We're not here filing a lawsuit against them to

13:22:51  4   seek money for that.  But the law that is referenced is,

13:22:59  5   my understanding, it is a defense in the case.   How can

13:23:02  6   they claim that this is the situation, then hide it?  I

13:23:09  7   am asking for a jury instruction in this case, only

13:23:12  8   depending on how the evidence comes out.   If the

13:23:14  9   evidence doesn't warrant it, then it's not an issue.

13:23:17  10  But striking it now on a motion in limine, we would

13:23:19  11  oppose now.

13:23:20  12          THE COURT:  What am I striking?   They're

13:23:23  13  asking -- what are you asking, that there be no use of

13:23:26  14  the phrase "spoliation of evidence?"

13:23:28  15          MR. DAVIS:  That's right, Your Honor.  We

13:23:30  16  don't think it's appropriate to have a jury instruction

13:23:32  17  in that regard either.   There's insufficient evidence

13:23:35  18  in the record to show this was an intentional act by Mr.

13:23:40  19  McCarthy to prejudice the City of Toledo from depending

13:23:43  20  on an argument --

13:23:44  21          THE COURT:  Stop right there.   Do you agree

13:23:46  22  with that?

13:23:46  23          MR. WATKINS:  No.

13:23:47  24          THE COURT:  Do you think he went out there

13:23:48  25  because he knew there was a lawsuit that was going to

13:23:50　1　follow, and he wanted to cover up the evidence?

13:23:52　2　　　　　MR. WATKINS:  I think after his examination

13:23:54　3　at trial a jury could reach that conclusion, whether

13:23:58　4　based on his testimony or an inference or their ability

13:24:00　5　to evaluate the truth and accuracy of his testimony.

13:24:04　6　　　　　MR. BAHRET:  Your Honor, whether his intent

13:24:06　7　was to hide evidence or not, there can be no question

13:24:09　8　that what he did was intentional.  I don't think you

13:24:12　9　have to have a malicious motive.  It just means you

13:24:15　10　intended to do something.  The evidence is gone.

13:24:18　11　　　　　THE COURT:  Well, for spoliation of evidence

13:24:20　12　there are several hoops you have to go through, and that

13:24:23　13　alone is not enough to prove a claim for spoliation of

13:24:25　14　evidence.  Have you got any case that says you can use

13:24:28　15　this as an affirmative defense?

13:24:30　16　　　　　MR. BAHRET:  Your Honor, I'm unclear of what

13:24:31　17　they're even asking us to keep out of evidence.

13:24:34　18　　　　　THE COURT:  I heard the phrase "spoliation

13:24:36　19　of evidence" at this point.  It's a motion in limine.

13:24:38　20　And any argument in front of the jury on that point, to

13:24:42　21　the extent it's a legal argument, we can have that

13:24:44　22　outside the presence of the jury.

13:24:46　23　　　　　MR. BAHRET:  Certainly.  Help me, Ethan, if

13:24:49　24　you would.  You're not asking for us to fail to mention

13:24:53　25　that the scene has changed?

13:24:55  1          MR. DAVIS: No, not at all.  And I think the
13:24:57  2   facts come in, obviously, that this dirt came in, and
13:25:00  3   the testimony will be that they were on the eve of an
13:25:03  4   auction, and they were trying to mitigate the harm as
13:25:06  5   best they could.  It was kind of a panic situation for
13:25:09  6   them.  And they ultimately didn't have the auction.
13:25:12  7   But at the end of the day, there's no evidence that
13:25:14  8   there was an intent to change this scene to prejudice
13:25:17  9   the City or anything else.
13:25:19  10         And, Your Honor, if it comes to this, this
13:25:20  11  will be one of the most interesting spoliation cases
13:25:24  12  because it's all photographed, them dumping the dirt.
13:25:27  13  I've never seen a party's spoliation of evidence and
13:25:31  14  take pictures of it all along the way.
13:25:34  15         MR. BAHRET:  The problem is your guy wasn't
13:25:36  16  the one who took the pictures; it was Ric-man.  Ric-man
13:25:40  17  took them because you were changing the scene.
13:25:43  18         THE COURT:  Well, I don't hear much dispute.
13:25:46  19  Nobody is going to be arguing spoliation in front of the
13:25:49  20  jury.  The City, at best, is using it as a defense that
13:25:52  21  it will use in making an argument, as I understand it,
13:25:56  22  at some point along the way.  And so I am going to
13:26:00  23  grant in part and deny in part the motion.  Any
13:26:04  24  discussion of spoliation ought to take place outside the
13:26:07  25  presence of the jury.  Because I view it, Keith, as I

13:26:10   1   understand your point, it's really a legal argument.  We

13:26:14   2   all are in agreement the underlying fact, perhaps even

13:26:17   3   the photographs, are admissible.  They're admissible to

13:26:19   4   talk about what the scene looked like, how it changed,

13:26:22   5   how it may have mitigated damages or not.  And in that

13:26:25   6   context we're all on the same page.  Whether it also is

13:26:28   7   appropriate for a spoliation argument, I'm not

13:26:31   8   convinced.  But we can address that at a later date I

13:26:34   9   think more appropriately.

13:26:36   10              MR. WATKINS:  Thank you.

13:26:37   11              THE COURT:  Anything further?  I believe --

13:26:40   12   am I right, Ethan -- that takes care of the motion in

13:26:43   13   limine motions pending before me.  But you have

13:26:45   14   something else?

13:26:46   15              MR. BAHRET:  When we were off the record in

13:26:47   16   chambers we discussed one other issue, and you did

13:26:50   17   request something in writing, which we'll make sure you

13:26:53   18   get.  But for purposes of the record, I don't remember

13:26:57   19   the names of the people involved, but Mr. Robon said he

13:27:01   20   was going to bring somebody from Hospice and somebody

13:27:04   21   from W.W. Knight to talk about flooding problems on

13:27:08   22   their properties, which have nothing to do with

13:27:12   23   Cambridge.  And we would ask orally at this time, and

13:27:15   24   subsequently in writing, an order in limine be issued

13:27:20   25   prohibiting that testimony as being totally irrelevant,

13:27:24   1   unsupported by any sufficient foundation.

13:27:28   2           THE COURT:  That's correct.  We did discuss

13:27:29   3   this briefly, and the Court is granting leave for

13:27:33   4   defendant and plaintiff to briefly brief that issue.

13:27:39   5   You don't need very many pages.

13:27:43   6           Is that testimony of record in the case by

13:27:45   7   chance that I can look at it over the weekend?

13:27:48   8           MR. ROBON:  It is not.

13:27:50   9           MR. BAHRET:  It is not.

13:27:51  10           MR. ROBON:  It is partially, Your Honor.

13:27:53  11   It is in Cindy [sic] Soncrant's -- when I deposed the

13:27:58  12   City engineer, she indicated they did cure some of the

13:28:01  13   other flooding problems that they created.

13:28:03  14           THE COURT:  But have these two people been

13:28:05  15   deposed?

13:28:05  16           MR. ROBON:  No.

13:28:06  17           MR. BAHRET:  The two people involved have

13:28:08  18   not been deposed.

13:28:09  19           And her name is Christy Soncrant, and she

13:28:11  20   did not say that the City caused anything.  What she

13:28:14  21   said is that Hospice had complained that hey had some

13:28:17  22   water problem, and since it cost no money at all, they

13:28:22  23   dug a swale back there, and Hospice was happy with that.

13:28:25  24           THE COURT:  As I understand, to crystallize

13:28:28  25   the issue, there are two nearby property owners who had

13:28:31   1   trouble with flooding.   The plaintiff wishes to offer

13:28:34   2   their testimony as a reflection of the City's action to

13:28:37   3   remedy the problem with those property owners, something

13:28:40   4   plaintiff alleges the City has not done with this

13:28:43   5   property.   The defendant's position is there is no

13:28:46   6   evidence that shows that the source of the flooding on

13:28:53   7   those properties is the same reason as the flooding on

13:28:56   8   this property?

13:28:58   9          MR. BAHRET:   That's true as far as you go.

13:29:00  10   And also if it was the same, it's irrelevant to this

13:29:04  11   property.   But yes, what you said is accurate.

13:29:06  12          THE COURT:   And to the extent you folks want

13:29:08  13   to brief that briefly, you have leave to do so.   And I

13:29:15  14   would like those no later than Sunday, which is the day

13:29:27  15   before trial.

13:29:30  16          I should also indicate that there has been a

13:29:35  17   joinder of the plaintiff in a motion of a now-dismissed

13:29:38  18   defendant for a jury view.   We've talked about that off

13:29:41  19   the record.   I sense no opposition and saw no

13:29:44  20   opposition from the City of Toledo, formal or otherwise.

13:29:47  21   And so a jury view has been approved by the Court.   And

13:29:51  22   I have worked with the parties on the logistics of that.

13:29:53  23   And I believe we have that worked out so that the jury

13:29:56  24   can have that view on Monday immediately after they're

13:30:00  25   sworn in.   So our plan is to have voir dire on Monday

13:30:04  1    afternoon, have a jury view.  We'll start fresh on

13:30:09  2    Tuesday morning at a time determined by the jury, begin

13:30:12  3    with opening statements and proceed with evidence.

13:30:16  4              MR. BAHRET:  For the record, Your Honor, we

13:30:17  5    join in the jury view request.  We did not file our own

13:30:20  6    separate request because I didn't think the Court would

13:30:23  7    want five or six different jury view requests because it

13:30:27  8    would be redundant.  Both parties are in agreement with

13:30:30  9    a jury view.  I'd like to commit to the record what we

13:30:33  10   said off the record in there, and that is that nobody

13:30:36  11   shall put any additional markings or stakes, painting,

13:30:42  12   or in any way change the scene.  And if it's already

13:30:46  13   occurred, remove it.  Also, nobody will make any

13:30:49  14   statements to the jury other than the Court-appointed

13:30:54  15   personnel when they go out on their jury view.

13:30:58  16             THE COURT:  And I also ask that counsel work

13:31:03  17   together and provide no later than Sunday a script that

13:31:05  18   will be read to the jury while they're on the jury view.

13:31:10  19   And I understand plaintiff's counsel has arranged for

13:31:12  20   bus transportation.  And I have concluded that defense

13:31:16  21   counsel will travel separately to the site, which may be

13:31:19  22   convenient for some to then go straight home or go to

13:31:23  23   the office and work on the case, whatever their

13:31:25  24   preference may be.

13:31:27  25             Marv?

13:31:28  1          MR. ROBON:  My only comment, since Mr.
13:31:29  2  Bahret joined in the jury view, I would request that he
13:31:32  3  pay half of the bus cost.
13:31:36  4          MR. BAHRET:  Is it too late to withdraw?
13:31:40  5          THE COURT:  I think that's fair.  We'll let
13:31:42  6  the record reflect we'll tax the cost half and half.
13:31:46  7          Anything further from counsel for either
13:31:48  8  side?  I encourage you to continue to discuss.  The
13:31:52  9  record should reflect we had some settlement discussions
13:31:54  10  prior to coming on the bench earlier today, that there's
13:31:58  11  been a narrowing of the gap between the parties, and
13:32:00  12  perhaps with your continued discussions you might narrow
13:32:05  13  it even further.  But I leave that ball in your court.
13:32:08  14  If there's nothing further, we're adjourned.
15          (Concluded at 1:32 p.m.)
16                    - - -
17
18          C E R T I F I C A T E
19
20    I certify that the foregoing is a correct transcript
21  from the record of proceedings in the above-entitled
22  matter.
23
24  /s Tracy L. Spore_____          _____
25  Tracy L. Spore, RMR, CRR               Date